Thank you very much. We're here for the argument in Walker v. Davis, and we apologize for the delay. And also, Judge Wallace and I wish to thank Judge Gilman from the Sixth Circuit for sitting with us and helping us with our busy docket. And with that, we will begin. Ms. Dorsey. Good morning, and may it please the Court. Elizabeth Dorsey from Perella, Braun and Martel for Petitioner Appellant Marvin Walker. I'm joined remotely today by my colleagues Douglas Young, Nancy Clarence, Thomas Mayhew, and Eric Monick-Anderson. I'd like to reserve five minutes for rebuttal. In this habeas case, Marvin Walker was convicted by a jury that was selected in a racially discriminatory manner and was instructed with constitutionally deficient jury instructions. First, the certificate of appealability should be expanded to include the jury instruction plan. The California Supreme Court held that it was error to not instruct the jury that felony murder special circumstance required an intent to kill instruction. The only issue here is the resulting rec prejudice. Counsel, if we were to agree with you on the Batson claim, for which there is a COA already, and I'm not prejudging it, I'm just asking, if we were to agree with you on that, would we have to reach the question of certifying the other issue? In other words, if there were a new trial, presumably the same instruction would not be given. If this court were to grant the Batson claim, I agree, Your Honor, that that would mute the question about the certificate of appealability, and you wouldn't need to decide the jury instruction claim because it would render Mr. Walker's trial a mistrial. Is that an additional ground, in your opinion, to grant habeas the bad instruction? It is an additional ground, and under that basis, the court could continue with its analysis and grant the COA and grant on the instructional grounds, but just finding on the Batson grounds would be sufficient in this case. So the record on the instruction claim demonstrates that the jury focused on whether Walker could be found guilty merely for being present at the scene as an accomplice. They asked questions regarding intent and accomplice liability three times over the course of three days of deliberation, and struggled with the secondary personal firearm charge, showing that the jury believed that Walker was actually the accomplice. Let me ask you a question that has bothered me about this case. The Supreme Court's taken a look at it, and we're reviewing the California Supreme Court for their law under their courts with their parties, and so we give them a lot of deference in that regard. The Supreme Court says, well, no harm, no foul, and they said, looking at the record, as they are entitled to do, that it's virtually impossible that he didn't shoot them. And then they say, but even if that's wrong, he's the one that said, I don't keep any witnesses and went to the back room, and so they say there was intent anyway. On each one of those issues, which seems to me to be important, a Supreme Court has made a decision. Why should we tip them over? Well, Your Honor, on this instruction claim, the court is not supposed to apply EDPA deference, and instead the Brecht prejudice analysis assumes that question. And so the court is not supposed to give that normal EDPA deference to the state court's determination. Importantly here, even if the court were to evaluate the state Supreme Court's analysis, that analysis is faulty. The state court concluded that it was virtually impossible that anyone but the defendant was the actual killer, and that conclusion does not take into consideration the significant questions from the jury over three days of deliberation, suggesting that they, in fact, did not reach that conclusion. So first of all, the Supreme Court failed to consider those questions at all. Second, the court ignored the effect of the prosecutor's closing argument, in which he repeatedly told the jury that it didn't matter who shot the gun. That argument by the prosecutor in closing argument just bolsters the fact that this is not Harmon's error. And third, the Supreme Court failed to consider that Walker was actually the younger, beanie-wearing, passive accomplice. And when they reached that determination, that even if Walker wasn't the shooter, they assumed that Walker was that cowboy hat-wearing, aggressive perpetrator. And under that basis, they concluded that there would be intent. How do you respond, though, to the California Supreme Court's analysis that there is no question that the jury found that this defendant intended to kill? And because of the verdicts concerning Romero and Zamora, who didn't die, but there was an intent to kill them. And they said, well, the only logical explanation here is that he intended to kill all three of the people, even though he didn't succeed with two of them. And they say it's inconceivable the jury would find that the defendant intended to kill only the victims who survived, but not the one who died. What's wrong with that reasoning? Yes, Your Honor. So the California Supreme Court, in making that analysis, is relying on the single instance in which the trial court gave the malice instruction that required intent under the assault charges. The problem here is that the same aiding and abetting instruction that's faulty for the murder charge is also faulty for those assault charges. And when the jury came back and asked those questions about aiding and abetting liability, the trial judge repeated that faulty aiding and abetting instruction three times, never repeated that intent requirement, and never repeated that malice requirement. And so when the jurors are asking the judge and are telling the judge, like, we're comfortable with the fact that you only have to be there, the court never corrects the juror's error there. When this court in Hovey Carey found that there is grave doubt whether some correct jury instructions can correct other jury instructions that are erroneous. So here the possibility that the jury's assault verdicts are based on the same deficient knowledge standard creates reasonable doubt on intent for the murder charge. It's also undermined by the prosecutor's closing argument where he downplayed the accomplice's role here, saying things like, you hear the accomplice protesting, he didn't even want to do anything. So here the prosecutor is downplaying that intent requirement for the accomplice as a whole in order to argue that, at least in his opinion, that Walker was the trigger man, which the jury rejected. Counsel, you're almost out of time. Would you address the Batson claim, please? And in particular, what is objectively unreasonable in the California Supreme Court's analysis? Yes, Your Honor. The California Supreme Court here simply repeats the prosecutor's reasoning and accepts that reasoning without question. The problem here is that these reasons are contradicted by the record, especially you can look at the court's reference to the fact that George, Michael George, expressed volunteered strong anti-death penalty views. The state Supreme Court simply doesn't look back to the record and recognize that many of these justifications are either pretextual or are undermined by the record. So, in fact, we see that the court accepted after the fact justifications, such as King's jury service and the prosecutor being told after he exercised the peremptory strike that he should strike her by a member of her church. It relies on facts contradicted by the record, such as George volunteering his death penalty views. It includes demeanor justifications that were explicitly rejected by the trial court, such as George's appearance. And it's undermined by comparative analysis, which the California Supreme Court doesn't do when you look at George's views on the death penalty in police. Now, because the California Supreme Court didn't do comparative analysis, and this court is required to do it on appeal, this court instead looks to the two-step process that is set out under Jamerson, where first, this court needs to review all of the relevant portions of the record to consider whether the prosecutor's justifications are contrary to the evidence in the record, and second, to reevaluate the state court's decision in that light. I think once you reevaluate the pretextual after the fact justifications that are contradicted by the record, and that occur throughout the prosecutor's justifications of his peremptory strikes, when you reevaluate it in the Supreme Court's opinion... Keep using the word reevaluate. I have a question from a practical point of view. When I was a district court judge, I had to look at people, and it wasn't necessarily the words they said. I took a look at them, and people have facial things they do. Sometimes they look nervous. There's a wide variety of things that you get when you're trying to determine whether a person's telling the truth, and we are saying that someone else can now, without even seeing that, can look at the cold words and be on an equal footing with a trial judge. I remember when I was a trial judge, and the appellate court did that. It made me quite disturbed. How do you respond to that? It just seems to me that it's very difficult, knowing the dynamics of determining whether a person's telling the truth, how much is beyond the words they say, but how they say it, and what the trial judge sees. Yes, Your Honor. First of all, in this case, the trial judge actually rejected several of the prosecutor's demeanor-based justifications as not being valid reasons for the peremptory strike in his opinion. I think the closest that the trial court gets to making that kind of demeanor-based justification that you talk about is with regard... No, you've missed what I'm saying. The trial judge is going to see whether the prosecutor's lying. Yes, Your Honor. I think that part of that justification has to also be evaluating where the prosecutor has given after-the-fact justifications and has given justifications contradicted by the record. So while this might be an easy case if we were only to look at one or two of the justifications that the prosecutor gives and find that the court could have validly found that those would have been reasonable conclusions if offered on their own, this Court's opinions have found that when there's also pretextual reasons that are given for the strike, that that undermines the validity of the strike and shows that it's unreasonable to accept the prosecutor's non-racial reasons as genuine, that the court is not supposed to simply conduct its own analysis and rely on its own conclusions. It actually has to evaluate each of the prosecutor's conclusions to evaluate whether that's true as well. And then we would rely on someone who never even saw the witness. That trumps... Yes, Your Honor. This Court's... In what case is it that rejects the analysis that I just identified, that it isn't the cold record, it's what you actually see? What's your best case that we can just toss that aside for this case? Well, Your Honor, the Supreme Court held in Millerell that you are supposed to do the comparative analysis, that you evaluate whether or not the justifications uphold, are all valid. And in that case, Chinchilla looks at... United States v. Chinchilla looks at the fact that where two of the justifications may have been valid, but two of them weren't, even though the court could have... the prosecutor could have offered a peremptory strike just on those two reasons, that it would otherwise undermine the clarity. How much are you relying on the comparative analysis in your argument? Your Honor, I think comparative analysis is only one of the several problems that we see here. I think, specifically, I think... Remember the time that it took place, and this was before the Supreme Court said that this is a good idea. Yes, Your Honor, but the Supreme Court... They're not bound by it. They weren't bound by something that happens later, are they? This court has held in... The court has held in Crittendom and in Millerell that all of these decisions are simply an analysis of that Batson analysis, that under EdPug, these are all established federal law for these purposes. And now I'd like to... Counselor, you're down to a minute and a half. Yes, I'd like to... Thank you. Thank you. We will hear next from Mr. Ortega by phone. Are you there, sir? Mr. Ortega? I'm sorry, Your Honor, I forgot to turn the mute button off. Okay, that helps. I apologize. Let me begin by recognizing, as the Supreme Court stated in Millerell, that AADPA deference does not by definition preclude relief. But as this court held in Cifuentes, the standard of review on Batson issues on federal habeas from state judgments is doubly deferential. Applying that standard of review here compels the rejection of Mr. Walker's Batson claim. The trial court found the prosecutor credible. The trial court expressly ruled, I'm satisfied that the district attorney has not engaged in any discriminatory practice by excusing the jurors. And this was after the trial court had explicitly asked the prosecutor, let me ask you directly, Mr. District Attorney, was it your intention to excuse and exclude these three or any of them because of their race? The prosecutor said no. I think this... Counsel, can you hear me? Yes, Your Honor, I can. What prosecutor would say otherwise? I mean, yes, he's obliged to tell the truth in court, but no one thinks that they're being discriminatory. And even if they do think so, they're probably not going to say, you know, fall on their sword and say, sure, I wanted them off there because they were African-American and I wanted an all-white jury. Don't we still have to look at all of the other circumstances and consider whether that is a valid conclusion? Absolutely, Your Honor. Very fair point. The game isn't over once the prosecutor says no. But I think this speaks to Judge Gilman's point about how we have the trial judge here making a credibility determination with respect to the district attorney based on what he was saying, how he said it. So then we go to the next step. What did the California Supreme Court do? The California Supreme Court found substantial evidence to support the trial court's credibility determination. So now we're on federal habeas. And as this court said in Sufuentes, unless the California Supreme Court was objectively unreasonable in concluding that the trial court's credibility determination was supported by substantial evidence, this court must uphold it. And in Sufuentes, this court said, we do look to things like, what are some of the explanations contrary to the evidence in the record? Were some of the reasons implausible or fantastic? Were some based on mischaracterizations of the prospective juror's testimony? And are some of them belied by comparative juror analysis? I don't think that we have that at all here. Well, listen, this is Judge Gilman. I mean, the California Supreme Court, as I read, didn't do any evaluation. It just basically listed the prosecutor's reasoning without actually evaluating. Well, I think they found that those reasons were supported by the record. Excuse me, Your Honor. How do you distinguish the Ninth Circuit case of Curry v. McDowell in 2016? In that case... You didn't cite that case in your brief, but it's the one that granted habeas in a murder case based on a Matthews challenge. Yes, Your Honor. And in that case, all of the prosecutor's reasons were flawed. Each reason was either unpersuasive, demonstrably false, or applied equally to the non-black jurors who were permitted to serve on the jury. So I think Curry is just exceptionally distinguishable. And I want to talk... We have the same factors here, don't we, where the point is that some of the reasons given to excuse the black jurors didn't apply to, like, Mr. Coulis. Alan Coulis, the white juror. Well, in that case, there was a substantial difference between Mr. Coulis and Mr. George. Mr. George, his experience with law enforcement was exceptionally negative. He filed the internal affairs complaint. He testified at length that he was the victim, often, of what he called the average black man syndrome. He was around, he would be somewhere, and he would just automatically be assumed to be the perpetrator when there was a crime nearby. Mr. Coulis' testimony was his drunk driving situation was handled fine by the police. He had no negative feelings towards the police. And with respect to Mr. George, the other two reasons that the prosecutor gave was that Mr. George dressed inappropriately for court and had volunteered concerns about the death penalty. Counsel keeps saying that the trial court rejected that demeanor-based reason that he dressed inappropriately for court. What the trial court said was, these are just matters of taste, personal opinion. And the trial court didn't see anything wrong with how Mr. George dressed. But that doesn't render race-based the prosecutor's reason. Let me ask you this. One of the reasons given for excusing all three of these black jurors was anti-police bias. Why is that even a factor here? I mean, this isn't an excessive force case. And I gather no policeman was an eyewitness to the murders or robberies. So what makes anti-police bias relevant here? Well, there were going to be – well, let me say this. In a criminal case, anti-law enforcement bias is always a reason to reject a juror from the prosecutor's point of view. And in this case, there were going to be police witnesses. There was the undercover officer, Officer McEvoy, who bought the gun from Mr. Walker. So I think on the facts of this case, bias against law enforcement would be a legitimate reason for the prosecutor to excuse jurors. Let me ask you this on a different issue. What do you make of the fact that Rupert Harper, the brother-in-law of Mr. Walker, later ended up confessing that he was the shooter? What effect, if any, does that have in this case? Okay, that comes from one of the parole hearings, I believe, early on. And then later, he recanted that at another parole hearing and maintains that Mr. Walker – Marvin Walker is the shooter. So that fact isn't really relevant to the two issues here. That was the parole hearing statement. I want to briefly mention one thing about Mr. George. And it's true that he didn't volunteer concerns about the death penalty. What he did do – Could I ask you something about Mr. George? As I understand it, there were three reasons given for removing him from the jury. One was that he volunteered, which you're about to say isn't correct, which I agree with. The second was that he was wearing a metal studded leather motorcycle jacket. And the California Supreme Court in footnote 5 rejects that as a permissible reason by saying that attire is not a proper reason and they won't consider it. So all that leaves is the one reason that he had been stopped by police and felt that he had had an excessive force situation at one time. So where does that leave us? I see that there's only that one reason. Does that – okay. Fair point. This is what Mr. George did say with respect to the death penalty. I do have feelings on that subject, which everyone else has. Certain feelings on that, too. If we should cross that bridge, you know, we'll consider that. But the thought of having, you know, having that control or being in that position, it would. It doesn't. It will affect me, you know, personally. I will have some feelings. I just couldn't do it at the drop of a hat, think nothing of it. I will feel bad. I will consider it, everything that is put to you know toward me. And that's at page 1090 of the excerpt of records. Is it objectively unreasonable that the prosecutor may have felt in that statement that Mr. George wasn't comfortable with the death penalty? I say it's not – How do you distinguish though Mr. Koulis, who also was even stronger about against the death penalty, and he was left on the jury? I must confess, Your Honor, I did not think Mr. Koulis was one of the comparative jurors with respect to the death penalty. I thought it was Ms. Alvarez. So I can't speak to that. All I can say is that not every juror is exactly the same. Well, no, to say that you don't want to impose the death penalty at the drop of a hat seems like, you know, a pretty reasonable thing to say. And it would be sort of appalling if someone said the opposite. I can't wait to do this. So I'm not sure that it is objectively reasonable to say that that is an inappropriate level of concern about the death penalty. In this case, the trial court found the prosecutor credible. We have one reason with Mr. George that is supported by the record. It's his experience with law enforcement. In my view, this statement from Mr. George could give the prosecutor concern that he wouldn't be a good juror in a death penalty case. And then we have the inappropriate dress that the trial court said was not inappropriate. In my view, giving double deference and the benefit that is out to the state court, there's no Batson violation there. This doesn't compel a race reason, which is what this court has said must be. Let me ask you this. Doesn't the record show there was an alternate juror who said she just flat couldn't consider the death penalty, and yet she was empaneled with the understanding that she could participate in the guilt phase and would just be taken off for the penalty phase? Now, why was she allowed to do it and not any of these black jurors? I don't know, Your Honor, why the prosecutor had, I believe, two more peremptories at that time. I don't know why he didn't use one on Ms. Almond. Isn't it a permissible inference that he used it selectively based on race? Isn't that the most reasonable inference? I don't think so. When reasonable minds can differ, then under the ADPA, this court must deny relief. And I think that's the best we can say here, is that reasonable minds could differ on whether the prosecutor was offering pretexts. I see that I'm almost out of time, unless the court has any questions. Yes, I have a question that is one that I put to opposing counsel as well. Assuming for the sake of this question that we were to find the Batson claim persuasive, would we have to even reach the question of a COA on the instructional issue? You do not, Your Honor. Counsel was correct. If this court grants relief via Batson, then the judgment is reversed. And you would not have to reach the issue of COA, because the COA issue only goes to the special circumstance. It doesn't go to guilt. So the whole thing would need to be retried if this court were to find a Batson violation. Right, and presumably a new trial that wouldn't repeat any instructional error, having been told what the right instructions are by the Supreme Court. Those have been corrected, Your Honor. That's no longer an issue. Thank you. Thank you. I believe you have about a minute and a half. Yes, Your Honor. Thank you. The state doesn't dispute that two of the reasons that were given to strike King were post hoc rationalizations that the prosecutor did not know at the time that he exercised the strike. He didn't know about the outcome of her prior jury experience or had not yet had the conversation with the church member. King, like George, fails the comparative analysis on the death penalty, which only leaves the prosecutor's analysis that King was anti-police because she reported a couple little harassments, that King actually never expressly linked to race, and that only the trial court and the prosecutor linked to being based on race. Those reasons mean that the King's, that striking King was an illegal use of the peremptory strike. Unto George, the only remaining reason that's left is his, quote, anti-police bias. But that's, again, the result of disparate questioning. He was questioned in a different manner than is Coulis. But more importantly, the fact that the prosecutor made up reasons about George's death penalty use, that he volunteered that he had doubts, is actually what happened with Coulis. Coulis is the person who volunteered to the court that he had severe doubts about the death penalty and couldn't, and actually had more severe views about the death penalty than did George, who simply said it wasn't used enough. On that basis, the fact that the California Supreme Court looks to whether the peremptory strikes were solely on the basis of racial discrimination is contrary to this court's opinion in Cook, which finds that this court only looks to whether or not the peremptory strikes were substantially motivated based on race. Under Curry, you don't simply stop when you get to one potentially valid reason for a peremptory strike. This court has to evaluate all of those reasons in the context of the record as a whole to determine whether or not they can be permitted. That searching inquiry shows that the prosecutor's reasons are after-the-fact justifications, undermined by the record and contrary to comparative juror analysis, and the result of disparate questioning. And on that basis, this court should issue the writ on the vaccine claim. Thank you, counsel. I'm sorry, Judge Wallace. I have a question. You once more talked about comparative jury analysis. Was that relevant at that time? That is, that was at the time this case took place. No one had told you you had to do comparative jury analysis. That occurred later, didn't it? You're correct, Your Honor, that at the time—well, at the time that this took place, the California Supreme Court held that if comparative juror analysis wasn't done by the trial court, it couldn't be done by the appellate court. This court has since held that even where the California Supreme Court doesn't do that comparative juror analysis, this court is required to do so. We're not arguing that the California Supreme Court's analysis is necessarily unreasonable because it didn't do comparative analysis. We're arguing that when you do do comparative analysis, it renders the list that the California Supreme Court gave without analyzing those reasons, it renders that unreasonable. Well, what I'm getting at, were they governed by later cases that took place that say you have to do the comparative jury analysis, when at the time that was not a requirement? How does that fit? I'm looking for the case, Your Honor, but this court has held that even when— We've held that we have to do it if the other court didn't, but I'm asking for which case that was because I don't recall. Your Honor, I'm not recalling off the top of my head. That's all right, we'll find it. Sorry, but yes, this court is supposed to go ahead and engage in that analysis even though the lower court didn't and wasn't supposed to at the time. Are there any other questions? Thank you. Thank you, Your Honor. I believe not. Thank you. The case just argued is submitted. We very much appreciate the arguments from both counsel, and we particularly appreciate your patience as we had to keep rescheduling. But with that, the case is taken under advisement, and we are adjourned. Thank you, Your Honor. Thank you, Your Honor. This court for this session stands adjourned.
judges: Gilman, Wallace, Graber